IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

VLADO GAZIC,

                Plaintiff,

v.	OPINION and ORDER

CHRIS BUESGEN, SGT. WOODWORTH,	23-cv-118-jdp
OFFICER DENO, and E. SPECKHART,

                Defendants.

---

Plaintiff Vlado Gazic, proceeding without counsel, alleges that officials at Jackson Correctional Institution (JCI) terminated his employment and disciplined him because he refused to work on his Sabbath day. Gazic is a Seventh-day Adventist. Gazic brings religious liberty claims under the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA).

Defendants move for summary judgment, and Gazic moves to dismiss their motion. Dkt. 48 and Dkt. 56. Defendants were unaware of any accommodation for Gazic's Sabbath observance, and their decision to terminate and discipline him was a reasonable response to his refusal to work. But the disciplinary actions were overturned after a grievance official learned that a sergeant had informally allowed Gazic to take Saturdays off, though defendants weren't aware of that arrangement. Gazic hasn't identified any cases, controlling or otherwise, finding prison officials liable for depriving a prisoner of his religious liberty in similar circumstances. Furthermore, Gazic's request for injunctive relief is moot because he has received backpay and other remedies that preclude the award of other meaningful injunctive relief. I will grant defendants' motion and deny Gazic's.

UNDISPUTED FACTS

The following facts are undisputed except where noted.

Defendant Christopher Buesgen was the deputy warden at JCI, defendant Eric Speckhart was the unit supervisor, defendant Amber Woodworth was a correctional sergeant, and defendant Shelly Deno was a correctional officer.

Gazic was a utility outdoor custodian at JCI. On February 25, 2017, a Saturday, Sargeant Woodworth told officicer Deno to wake up Gazic and the other utility outdoor custodian to clear snow and ice around Gazic's housing unit. Deno woke Gazic up and ordered him to clear the snow and ice. The parties agree on the essential facts: Gazic refused Deno's order to work, stating that it was his religious holy day. Dkt. 49 ¶ 23. Deno reported the refusal to Woodworth.

Woodworth issued a minor conduct report for disobeying orders based on Gazic's refusal to work. Dkt. 53-3 at 2. Nondefendant Captain L. Dunahay reviewed the conduct report and approved a minor disposition of five hours' extra duty. Dkt. 53-3 at 2; *see* Dkt. 62 ¶¶ 69–70.

Gazic's refusal to work warranted a review of his job placement. Woodworth terminated Gazic's job placement on the day of the incident, documenting that he refused to shovel the courtyard multiple times. Dkt. 53-4 at 5–6. Woodworth forwarded the termination documents to unit supervisor Speckhart for review and final approval. Speckhart approved Gazic's termination. *Id.*; *see* Dkt. 62 ¶¶ 100–02.

Gazic appealed to deputy warden Buesgen. Dkt. 53-3 at 1. Gazic wrote that he was appealing the disposition of five hours' extra duty because he had been asked to work on his day off and Sabbath and because his due process hearing was unfair. *Id.* Buesgen affirmed

2

Dunahay's disposition based on determinations that Gazic: (1) submitted the appeal more than 10 days after the disposition; and (2) had received a fair opportunity to make a statement. *Id.*

Gazic wrote to Buesgen asking for his termination to be investigated. Dkt. 53-4 at 2–4. Gazic wrote that he should not have been terminated because nondefendant Sergeant Lindal had given him Fridays and Saturdays off so that he could observe his Sabbath. *Id.* at 2. Buesgen didn't overturn the termination, but he informed Gazic that he could object through the prisoner complaint system. *Id.* at 1.

Gazic submitted a prisoner complaint challenging his termination. Dkt. 21-4 at 16–17. The institution complaint examiner, nondefendant J. Dougherty, recommended dismissing the complaint. *Id.* at 2–3. Dougherty found that Gazic: (1) voluntarily accepted a work assignment that conflicted with his Sabbath; and (2) didn't make a formal request to nondefendant Chaplain Olson asking to be excused that day. *Id.* The warden, nondefendant E. Tegels, approved the recommendation. *Id.* at 4.

On further appeal, the corrections complaint examiner, nondefendant Emily Davidson, recommended affirming Gazic's appeal, which meant that she deemed the appeal to have merit. *Id.* at 7–8. Davidson wrote that Dougherty interviewed Lindal, who confirmed that he and Gazic had a verbal agreement to avoid scheduling him to work on his Sabbath. *Id.* at 7. Davidson also wrote that Gazic's refusal to work on his Sabbath was consistent with DAI Policy 309.61.01, which requires prisons to make reasonable efforts to accommodate a prisoner's observance of days of special significance. *Id.* at 7–8. Davidson recommended vacating Gazic's conduct report and awarding him backpay "from the day of the incident and conduct report to the time [he] was removed from voluntary unassigned status." *Id.* at 8; *see also* Dkt. 62 ¶ 134;

DAI Policy 309.55.01, § IV.A ("Inmates who refuse or are negatively removed from a work or primary program shall be placed in voluntary unassigned status and shall not be compensated for a minimum of 90 days unless already enrolled in a different primary program than the one in which the inmate refused or was negatively removed."). The DOC secretary approved Davidson's recommendation. Dkt. 21-4 at 9. Gazic has received backpay for the periods that he was unemployed following his termination. *See* Dkt. 62 ¶¶ 135–37.

DAI Policy 309.61.01(F) sets forth a procedure by which prisoners may request to be excused from work for religious observance. Dkt. 52-1 at 8. Prisoners must request a work proscription accommodation no fewer than 30 days before the observance date. *Id.* The request must be consistent with the prisoner's designated religious preference. *Id.* Requests are reviewed and approved or denied by the prison's chaplain or designee in consultation with the Religious Practices Advisory Committee Executive Committee. *Id.*

I will discuss additional facts as they become relevant to the analysis.

ANALYSIS

A.  RLUIPA claim

Gazic is proceeding on a RLUIPA claim against defendants based on allegations that they terminated his employment and disciplined him because he refused to work on his Sabbath. Gazic seeks injunctive relief based on this claim. *See* Dkt. 22 at 3.

The essential principle of RLUIPA, as it applies to prisoners, is simple: any substantial burden on a prisoner's religious exercise is subject to review akin to strict constitutional scrutiny. *See Ramirez v. Collier*, 595 U.S. 411, 424–25 (2022); *West v. Radtke*, 48 F.4th 836, 847 (7th Cir. 2022). Thus, RLUIPA affords greater substantive protection of religious practices

4

than does the First Amendment's free exercise guarantee. *Ramirez*, 595 U.S. at 424. But RLUIPA remedies against an individual government official are limited to declaratory and injunctive relief. *See Vinning-El v. Evans*, 657 F.3d 591, 592 (7th Cir. 2011) ("RLUIPA does not authorize any kind of relief against public employees . . . ."); *see also Stewart v. Beach*, 701 F.3d 1322, 1335 (10th Cir. 2012) ("[T]here is no cause of action under RLUIPA for individual-capacity claims.").

Under 42 U.S.C. § 1983, "declaratory or injunctive relief is only proper if there is a continuing violation of federal law." *Kress v. CCA of Tenn., LLC*, 694 F.3d 890, 894 (7th Cir. 2012); *see also Al-Alamin v. Gramley*, 926 F.2d 680, 688 (7th Cir. 1991). Along similar lines, a plaintiff's claim is moot when the court cannot grant him any form of meaningful relief. *See Pakovich v. Verizon LTD Plan*, 653 F.3d 488, 492 (7th Cir. 2011).

The secretary vacated Gazic's conduct report, and Gazic received backpay for the periods that he was unemployed following his termination. Prison officials eventually removed Gazic from voluntary unassigned status, and there's no evidence that he is barred from future employment, whether as a utility outdoor custodian or otherwise, because of his termination. There is no evidence that Gazic's religious exercise faces any ongoing substantial burden. In view of the relief that prison officials awarded Gazic, there is no meaningful injunctive relief that I could grant him.

Gazic's arguments to the contrary lack evidentiary support and are unpersuasive. Gazic says that he had to perform five extra days of duty that "was not [alleviated]." Dkt. 57 at 4. But Gazic doesn't explain how an award of injunctive relief would remedy extra days of work that he already completed. Gazic also says that the negative work evaluation is still in his file. *Id.*; *see* Dkt. 59 ¶ 50. But Gazic's conduct report was vacated and there's no evidence that he

5

can no longer seek employment for the same or another position because of the termination. Gazic hasn't shown that the mere existence of a past negative evaluation is continuing to substantially burden his religious exercise. Gazic says that the program review committee is using the expunged records to "to punish [him] on the points system" used to determine custody classifications. Dkt. 59 ¶ 51. But Gazic has not explained a basis for personal knowledge of this matter or adduced evidence to support this statement. I will grant summary judgment to defendants on Gazic's RLUIPA claim.

## B. First Amendment claim

Gazic is proceeding on a First Amendment claim against defendants based on the same allegations underlying his RLUIPA claim. Gazic seeks damages and injunctive relief based on the First Amendment claim. *See* Dkt. 22 at 3. Gazic's First Amendment claim for injunctive relief is moot for the same reasons that his RLUIPA claim for injunctive relief is moot. That leaves his First Amendment claim for damages.

"The Free Exercise Clause prohibits the state from imposing a substantial burden on a central religious belief or practice." *Kaufman v. Pugh*, 733 F.3d 692, 696 (7th Cir. 2013). "A substantial burden puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Thompson v. Holm*, 809 F.3d 376, 379 (7th Cir. 2016) (alteration adopted). If Gazic were forced to choose between keeping his job and working on his Sabbath in violation of his religious beliefs, that would violate his First Amendment right to religious freedom. But Gazic didn't face that stark choice here. Gazic was disciplined because he had not obtained advance written permission pursuant to DAI Policy 309.61.01(F). *See* Dkt. 47 at 12–14. The burden placed on Gazic's religious practice was a procedural hurdle.

In the prison context, a burden on a religious practice is justified if it is "reasonably related to a legitimate penological interest." *Neely-Bey Tarik-El v. Conley*, 912 F.3d 989, 1003 (7th Cir. 2019); *see also Turner v. Safley*, 482 U.S. 78, 89 (1987). Under *Turner*, courts consider whether the restriction has a rational connection to a legitimate penological interest; whether alternative means are open to prisoners to exercise the asserted right; what impact an accommodation of the right would have on guards and prisoners and prison resources; and whether there are ready alternatives to the restriction. *See Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). The first *Turner* factor—whether there is a rational connection between the restriction and a legitimate penological interest—is the most important factor and can be dispositive. *See Mays v. Springborn*, 575 F.3d 643, 648 (7th Cir. 2009) ("Where . . . there is only minimal evidence suggesting that the prison's regulation is irrational, running through each factor at length is unnecessary."); *Sebolt v. Samuels*, 749 F. App'x 458, 460 (7th Cir. 2018) ("The first of [the *Turner*] factors . . . is the principal factor.").

In evaluating whether there is a rational connection between a restriction and the legitimate penological interest, the initial burden of proof is on the governmental defendants. *Singer v. Raemisch*, 593 F.3d 529, 536–37 (7th Cir. 2010). Once the defendants offer a plausible explanation for the restriction, the burden shifts to the plaintiff to present evidence undermining the defendants' explanation. *Id.*

The evidence shows that the burden placed on Gazic's religious exercise furthered at least three legitimate penological interests: (1) safety; (2) ensuring that prisoners complete their work assignments; and (3) prisoner discipline. Ensuring the safety of prisoners and prison guards is a legitimate governmental interest. *See Van den Bosch v. Raemisch*, 658 F.3d 778, 785 (7th Cir. 2011). It's undisputed that allowing snow and ice to accumulate in the busy outdoor

7

area in front of Gazic's unit created a hazard that staff and prisoners could slip, fall, and injure themselves. Dkt. 62 ¶¶ 51–52, 79. It's also undisputed that JCI had previously experienced slip-and-fall accidents, and that Gazic's position was created in part to avoid hazardous slippery conditions. *Id.* ¶¶ 80–81.

Ensuring that prisoners complete their work assignments is also a legitimate governmental interest. *See Mayweathers v. Newland*, 258 F.3d 930, 938 (9th Cir. 2001). And punishing unexcused work absences is rationally connected to that interest. *See id.*; *see also Watkins v. Kasper*, 599 F.3d 791, 798 (7th Cir. 2010) (stating that "prison discipline" is a legitimate governmental interest). Gazic contends that defendants lacked a legitimate penological interest to punish him for his failure to work because Lindal had given him Fridays and Saturdays off for religious observance. But the evidence shows that no defendant thought that to be the case. The government has a legitimate interest in requiring prisoners to follow formal procedures related to religious observances so that prison staff can know what prisoners are available to perform necessary prison work.

Deno and Woodworth say that they understood that prison policy required a prisoner to obtain advance written permission from the chaplain if he wanted to celebrate a holy day. Dkt. 49 ¶¶ 18–19; Dkt. 50 ¶¶ 22–23. Chaplain Olson concurred based on DAI Policy 309.61.01(F), Dkt. 52 ¶¶ 14–16, and his reading of that policy is reasonable, *see* Dkt. 52-1 at 8. There is no evidence that during the incident Deno, Woodworth, or Speckhart was aware of Gazic's informal arrangement with Lindal to have Fridays and Saturdays off. Gazic's evidentiary citations don't support his contention that Deno, Woodworth, and Speckhart were aware of the informal arrangement during the incident. *See, e.g.*, Dkt. 59 ¶ 25; Dkt. 59-3 at 1; Dkt. 53-3 at 2.

Gazic says, and defendants don't dispute, that he told Deno and Woodworth during the incident that it was his day off and his Sabbath. But, again, Gazic hasn't adduced any evidence that Deno, Woodworth, or Speckhart actually believed that to be the case. Gazic also says that nondefendant sergeant Haines and sargeant Brown told Deno that Saturdays were his day off and Sabbath. Dkt. 59 ¶¶ 11–12; *see also* Dkt. 59-3 at 1. But Gazic hasn't explained how he has personal knowledge of these statements, which in any case are hearsay. *See Carlisle v. Deere & Co.*, 576 F.3d 649, 655 (7th Cir. 2009) (courts may not rely on inadmissible hearsay on summary judgment). Gazic also says that Deno had previously tried to make him work on his Sabbath multiple times. Dkt. 59 ¶ 9. But Gazic doesn't specify whether he told Deno that he had the day off to observe his Sabbath and, even had he, there's no evidence that Deno thought that to be the case. And, more important, Gazic had not followed the formal prison procedure that would have provided prison staff with clear knowledge of Gazic's sabbath work restrictions.

Gazic also contends that Deno and Woodworth said that they didn't care about his religion. But simple verbal harassment by prison staff doesn't state a constitutional claim. *See DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000), *abrogated on other grounds*, *Savory v. Cannon*, 947 F.3d 409 (7th Cir. 2020). Those statements alone would not be enough to show that Deno or Woodworth actually thought that Gazic had Saturdays off to observe his religion.

Gazic says that Speckhart would have known about the informal arrangement because Speckhart approved his termination. *See* Dkt. 59 ¶¶ 31–33. But this is purely speculation because Gazic's evidentiary citations don't support this claim. *See* Dkt. 53 ¶ 1; Dkt. 59-2; *see also Flowers v. Kia Motors Fin.*, 105 F.4th 939, 946 (7th Cir. 2024) ("[S]peculation is insufficient to defeat a summary judgment motion."). Gazic also says that Speckhart knew that

9

he didn't have to work on Saturdays because Speckhart handled payroll and had to approve days off. Dkt. 59 ¶ 35. Gazic's evidence, an entry from a trust account statement made months after the events at issue, doesn't clearly support this statement. *See* Dkt. 59-2 at 4. In any case, even if Speckhart knew that Gazic had Saturdays off, it's speculative to assume that he thought that this accommodation was for religious observance.

Buesgen was aware of the informal arrangement only two months after the incident. At that time, Buesgen received Gazic's letter in which he wrote that Lindal had given him Fridays and Saturdays off so that he wouldn't have to work on his Sabbath. Buesgen declined to overturn Gazic's termination based on the existing record, which didn't include written approval from Olson for religious observance. *See* Dkt. 51 ¶¶ 38–40, 50–53. Even so, Buesgen didn't leave Gazic without a remedy. Buesgen advised Gazic that he could object through the prisoner complaint system, which he successfully did. Gazic also says that Buesgen was aware that he was receiving Fridays and Saturdays off because he reviewed his appeal of the conduct report. Dkt. 59 ¶¶ 40, 47. Gazic's citations don't support this statement. *See* Dkt. 51 ¶ 56; Dkt. 59-4 at 1.

To sum up, requiring Gazic to work and then disciplining him for refusing to fulfill what defendants had good reason to think was his responsibility was rationally related to the interests of safety, ensuring that prisoners complete their work assignments, and prisoner discipline. There's no evidence that these measures were irrational, so I need not apply the other *Turner* factors.

But even if Gazic could show a violation of his religious exercise rights, qualified immunity would shield defendants from liability unless their conduct violated his clearly established First Amendment rights. *See Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 620 (7th

10

Cir. 2022). "A right is clearly established where it is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Id.* In most cases, the plaintiff must identify a closely analogous controlling case finding the alleged violation unlawful, or at least a clear trend in persuasive authority showing that "recognition of the right by a controlling precedent was merely a question of time." *Id.*; *accord Reed v. Palmer*, 906 F.3d 540, 547 (7th Cir. 2018). Gazic bears the burden of defeating the defendants' claim to qualified immunity. *Taylor v. City of Milford*, 10 F.4th 800, 806 (7th Cir. 2021).

Defendants are entitled to qualified immunity. Gazic hasn't identified any case, controlling or otherwise, finding a violation of a prisoner's religious liberty in comparable circumstances. *See* Dkt. 47. Gazic's central contention is that defendants sanctioned him even though they knew that he didn't have to work on his Sabbath. But, as I've explained, that contention is unpersuasive. Gazic had not obtained advanced written authorization excusing his Saturday work, and none of the defendants were aware of his informal authorization.

I will grant defendants' motion for summary judgment, and I will deny Gazic's motion to dismiss their motion.

ORDER

IT IS ORDERED that:

1. Defendants' motion for summary judgment, Dkt. 46, is GRANTED, and plaintiff's motion to dismiss that motion, Dkt. 56, is DENIED.

2. Defendants' motion to stay case schedule, Dkt. 64, is DENIED as moot.

3. The clerk is directed to enter judgment and close the case.

Entered February 27, 2025.

                          BY THE COURT:

                          /s/

                          _____
                          JAMES D. PETERSON
                          District Judge